UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| HENRY CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 05-537-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CLAYTON STAMPER and | ) | **MEMORANDUM OPINION** |
| JEREMY LEE, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court for consideration of cross motions for summary judgment filed by Defendants Clayton Stamper ("Stamper") and Jeremy Lee ("Lee") [Record No. 13] and Plaintiff Henry Campbell ("Campbell") [Record No. 14]. For the reasons discussed herein, the Court will grant the Defendants' motion and will deny the relief sought by the Plaintiff.

**I.   RELEVANT FACTS**

On October 3, 2004, Kentucky State Police radio dispatcher Sarah White (formerly "Combs"), received a 911 telephone call at Kentucky State Police Post 13, located in Hazard, Kentucky. The female caller stated that a man was on the side of the road was pointing a .22 rifle at cars. [Record No. 13, Ex.1, p.2] The description of the location of this incident led White to believe that the person was located on the shoulder of Highway 80, now known as the "Hal Rogers Parkway," and in the vicinity of the Perry County line. [Record No. 13, Ex. 1, p. 2] The caller did not identify herself and she could not subsequently be identified by state police.

[Record No. 13, Ex. 1, p. 2]  In addition, it appears the caller was calling from a cellular telephone and the reception of the call was not very good.

White verbally relayed at least a portion of this information to Kentucky State Police Troopers Clayton Stamper and Jeremy Lee who were present at Post 13 at the time the call was received. [Record No. 13, Ex. 1, p. 2]  Both Stamper and Lee immediately left the Post in their cruisers and proceeded west on Highway 80 to investigate the complaint. [Record No. 13, Ex. 1, p. 2] As they approached the area believed to be the subject of the 911 call, the troopers observed a male (later determined to be Campbell) sitting on a guardrail on the side of Highway 80 with a long gun-type firearm (later determined to be a .410 gauge shotgun) leaning on the guardrail and within his reach.[1]  [Record No. 13, Stamper depo., p. 3; Lee depo., p. 4]  Upon observing Campbell, the officers stopped and exited their cruisers, drew their firearms, and ordered Campbell to move away from the firearm and to lay face down on the pavement. [Record No. 13, Stamper depo., p. 4; Lee depo., p. 5]  Campbell readily complied with these requests.

Stamper then placed Campbell in handcuffs and frisked him for additional weapons.[2] [Record No. 13, Lee depo., p. 7]  Upon finding none, Stamper testified that he helped Campbell off the pavement. [Record No. 13, Stamper depo., p. 5]  Stamper and Lee then interviewed Campbell and determined that he was not engaged in criminal activity. [Record No. 13, Stamper

---

[1] The Court notes that a .410 shotgun could be easily confused with a .22 caliber rifle.  However, it is unclear whether the officers were advised that the suspect had a long gun or a hand gun.

[2] It is undisputed that trooper Lee did not participate in cuffing Campbell.

depo., p. 9; Lee depo., p. 11] After being unable to locate anyone to transport Campbell, Stamper then drove him to a relative's home. [Record No. 13, Stamper depo., p. 9]

Campbell filed this action pursuant to 42 U.S.C. § 1983 on September 30, 2005, against Stamper and Lee, alleging that they violated his Fourth Amendment rights in connection with the October 2004 incident. In addition, Campbell asserted state law claims against Stamper and Lee for false imprisonment and emotional distress. On June 29, 2006, Stamper and Lee moved for summary judgment based on qualified immunity. Campbell also filed a motion for summary judgment, arguing that there is no genuine of issue of fact concerning the claim that Stamper and Lee violated his constitutional rights.

## II.     LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n,*

*Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) quoting *Anderson*, 477 U.S. at 251-52.

### III.   ANALYSIS

To prevail on a claim brought pursuant to 42 U.S.C. § 1983, Campbell "must establish that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). Campbell must also overcome the defense of qualified immunity which provides that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A qualified immunity analysis consists of two questions. First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that a constitutional

violation has occurred? If this question is answered in the affirmative, the Court must then determine whether the right was clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194 (2001).

### A. Did the Officers' Conduct Constitute a Constitutional Violation?

As *Saucier* directs, the Court must initially determine whether either officer's conduct constituted a constitutional violation. Campbell argues that the officers violated his Fourth Amendment rights because: (1) the information known to Stamper and Lee did not provide them with reasonable suspicion to conduct a Terry stop; and (2) the manner in which the "stop" was conducted was not warranted by the circumstances. At the outset, the Court acknowledges two general rules applicable to this analysis. First, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures . . ." Second, a seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that police officers are permitted to conduct a limited type of seizure (*i.e.*, an "investigatory stop") if the officers have reasonable suspicion to believe that criminal activity is afoot. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion" requires that an officer have "a particularized and objective basis for suspecting the particular person . . . of criminal activity" based on "specific articulable facts." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813-14

(6th Cir. 1999) (citations and quotations omitted). Courts examine that "totality of the circumstances." to determine whether reasonable suspicion existed to justify a *Terry* stop." *Id*.

In a recent decision, the Sixth Circuit recognized that the reasonableness of a stop is determined by considering two factors:

> (1) whether there was a proper basis for the stop, which is judge by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicion and the surrounding circumstances.

*Smoak v. Hall*, No. 05-6511, 2006 WL 2455321, at *7 (6th Cir. August 25, 2006). "In other words, the greater the degree of intrusion during a stop, the more solid must be the officer's suspicion that the stopped individual is guilty of wrongdoing." *Id*. In the present case, the Court must initially determine whether, at the moment that the officers' initiated the detention, the totality of the circumstances provided them with the reasonable suspicion in order to briefly detain Campbell while they investigated the 911 call. *Arvizu*, 534 U.S. at 266 (instructing courts to look at the totality of the circumstances in determining the existence of reasonable suspicion).

Here, Stamper and Lee initially relied on a dispatcher's information[3] that there was a man on the shoulder of Highway 80 in or near Perry County pointing a firearm at motorists. Upon

---

[3] It is also notable that "[r]easonable suspicion need not arise from an officer's direct observation, but can be based on informant tips and dispatcher information." *Smoak v. Hall*, No. 05-6511, 2006 WL 2455321, at *8 (6th Cir. August 25, 2006) (citing *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998). A seizure conducted solely in reliance on dispatch information does not violate the Fourth Amendment if the law enforcement officer issuing the information possessed reasonable suspicion. *Id*. (citing *United States v. Hensley*, 469 U.S. 221 (1985)). Based on the evidence in the record, it is apparent that the dispatcher on whom Stamper and Lee relied had reasonable suspicion. However, inasmuch as the relevant inquiry for purposes of qualified immunity is whether the officers conducting the seizure possessed reasonable suspicion based on the information available to them, the court will focus primarily on the facts available to Stamper and Lee at the time of the seizure. *See id*.

receiving this information, the officers left the post to investigate the call. The record is unclear whether the Stamper and Lee were aware that the information relayed to the dispatcher was from an anonymous caller.[4] However, as they traveled to the area described by the caller, the officers observed Campbell leaning on the guardrail with a long gun to his right and in close proximity. During their deposition, both officers testified that, based on their experience, it was unusual to see a pedestrian with a weapon on the side of the road on this portion of the Parkway, even during hunting season. [Record No. 13, Stamper depo., p. 24; Lee depo., p. 19-20]

Campbell argues that, in considering the totality of the circumstances, the officers lacked reasonable suspicion to stop and detain him and, as a result, they violated his Fourth Amendment rights. Campbell contends that the present case is similar to the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000). In *Florida v. J.L.*, police received a tip from an unknown informant that a young black male was standing at a particular bus stop, wearing a plaid shirt and carrying a gun. Police responded to the scene, saw a young black male wearing a plaid shirt and proceeded to make a *Terry* stop. The Court concluded that the police lacked reasonable suspicion to search an individual where their suspicion was based solely on an anonymous tip that an individual matching the defendant's description and location was carrying a gun. *See J.L.*, 529 U.S. at 268.

---

[4] It is unclear from the record whether the dispatcher also informed the officers that the man was pointing the gun at himself. In her affidavit, the dispatcher indicated that the caller only told her that the man was pointing the gun at passing cars. However, the dispatcher indicated that she mistakenly told Lieutenant Jerry Hall over a two-way radio system that the man was also pointing the gun at himself. If the dispatcher had informed the officers that Campbell was pointing the gun at motorist *and* himself, this additional information would provide further support for the Defendants' actions. For purposes of the present motions, the Court will assume that this information was not provided to either officers.

The facts in the present case are clearly distinguishable from *Florida v. J.L.* In *J.L.*, the defendant was in an ordinary place, behaving in an ordinary manner. In addition, although the anonymous caller's allegation that J.L was carrying a gun turned out to be correct, this information could not be verified by the police *prior* to the frisk. Specifically, the *J.L.* court noted that "the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller." *Id.* at 270. Here, unlike the facts presented in *J.L.*, Campbell was in an unusual location and engaged in criminal activity. Moreover, the gun that was the subject of the anonymous call was visible to the officers when they encountered Campbell sitting at the shoulder of the highway.

In addition, it is notable that, when Stamper and Lee went to the place reported by the caller, they *observed* at least part of the activity reported by the caller, that is, Campbell sitting on the guardrail beside the highway and in possession of a firearm. Although the officers did not actually see Campbell committing any illegal conduct (*i.e.*, pointing the gun at motorists), they were able to verify other details of the call. Based on the information available to them, the Court finds that while the officers did not have probable cause for an arrest, they certainly had reasonable suspicion sufficient to conduct a *Terry* stop.[5] The officers' observations, combined

---

[5] To the extent Campbell is alleging that the search, following the detention, violated his Fourth Amendment rights, the Court also finds the search conduct by the officers was lawful. *Terry* allows for a limited search of a suspect if an officer can articulate reasonable suspicion that a person may be armed. *Terry*, 392 U.S. at 26. Here, the totality of the circumstances not only provided Stamper and Lee with reasonable suspicion to detain Campbell but also to conduct a limited search for their safety to ensure that he did not possess any additional weapons.

with the information provided to them by the dispatcher, establish that they were justified in briefly detaining Campbell while the 911 call was investigated.

The above conclusion does not end the relevant inquiry because the Court must also determine whether the *manner* in which the stop was conducted was warranted under the circumstances. At the pre-trial conference, counsel for the Campbell argued that, based on the information available to the officers at the time of the stop, they were not justified in drawing their weapons and handcuffing Campbell before he was questioned. However, under the circumstances of this case, the Court must disagree with this argument.

The Sixth Circuit has noted that "[t]he use of handcuffs during a *Terry* stop [is] permissible so long as the circumstances warrant the restraint." *Bennett v. City of Eastpointe*, 410 F.3d 819 (6th Cir. 2005). That court also has recognized that the use of guns do not automatically transform a *Terry* stop into an arrest so long as the display of force is warranted by the circumstances. *Houston*, 174 F.3d at 815.

While Campbell's counsel conceded that Stamper and Lee's actions in the instant case did not transform the detention into an arrest, they argues that manner in which the investigatory stop was conducted violated Campbell's Fourth Amendment rights. Again, however, the court disagrees. The information relayed to the officers by the dispatcher that an individual was located on the side of Highway 80 pointing a firearm at motorists combined with their own observations of a person in the area with a firearm provided Stamper and Lee with a reasonable fear that Campbell was armed and dangerous. *See Houston*, 174 F.3d at 815. The record is clear that after conducting a pat down for weapons and determining that Campbell was not engaged

in criminal activity, Stamper and Lee holstered their weapons and removed the handcuffs. In balancing Stamper and Lee's suspicion against the intrusiveness of the detention and search, the court finds that the manner in which the officers' conducted the investigation did not constitute a violation of Campbell's Fourth Amendment rights.[6] Instead, the Court concludes that, under the undisputed facts of this case, the officers actions were reasonable and prudent.

### B.   Was the Right Clearly Established?

Even if Stamper and Lee's conduct constituted a constitutional violation of Campbell's Fourth Amendment rights, these rights cannot be said to be "clearly established" so as to preclude qualified immunity. "[T]he question is whether 'any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994).

The cases cited by the parties demonstrate that "this area is one in which the result depends very much on the facts of each case . . . the cases by no means 'clearly establish' that [Stamper and Lee's] conduct violated the Fourth Amendment." *Brosseau v. Haugen*, 543 U.S. 194 (2004). Therefore, the officers are also protected under the doctrine of qualified immunity.[7]

---

[6]   Having determined that Stamper and Lee did not violate Campbell's Fourth Amendment rights, Campbell's motion for summary judgment will be denied.

[7]   While there may be some question concerning whether the Plaintiff is also alleging an excessive force claim for tight handcuffing, any potential ambiguity has been resolved. During the recent pretrial conference, Plaintiff's counsel acknowledged that Campbell was not asserting such a claim. In addition, Campbell states in his pleadings that "[t]his is not a handcuffing case." [Record No. 18, p. 14] Instead, "[the motion for summary judgment] hinges on one central fact – did the anonymous phone call tip give the Defendants reasonable suspicion under *Terry*." [Record No. 14, p. 3] Accordingly, the Court need not address this issue in connection with the pending motions.

## IV.   CONCLUSION

The undisputed facts establish that the Defendants in this action acted prudently and reasonably under the circumstances. In investigating the 911 call, neither officer violated the Plaintiff's Constitutional rights. In addition, the Defendants are entitled to the protections afforded by the doctrine of qualified immunity. Accordingly, it is hereby **ORDERED** as follows:

1. The Defendants' motion for summary judgement [Record No. 13] is **GRANTED**;

2. The Plaintiff's motion for summary judgment [Record No. 14] is **DENIED**;

3. The Plaintiff's state law claims for false imprisonment and emotional distress are **DISMISSED** without prejudice.

This 30th day of August, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge